NO. 07-99-0116-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 19, 2000

______________________________

IN THE MATTER OF THE MARRIAGE OF

ALBERT PHILLIP POSTAR AND JUDITH ROWDON POSTAR

_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 95-550,427; HONORABLE G. THOMAS CANNON, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Albert Phillip Postar appeals from orders regarding the sale of property during the pendency of his divorce action, and from the final property division made by the trial court.  He alleges that (1) the trial court improperly ordered the sale of some of his separate property and required the proceeds to be used for payment of community obligations and temporary spousal support when community funds were available, and (2) the trial court failed to divide the estate of the parties with due regard for his rights because the court mischaracterized some of his separate property as community property in making the property division.  We affirm. 

I.  BACKGROUND

Appellant Albert Phillip Postar and appellee Judith Rowdon were married in February, 1965.  Appellant filed for divorce in February, 1995.  No minor children were involved in the divorce, and the controversies between the parties primarily involved the use of, accounting for, valuation of and division of property.  

The road to a final decree of divorce and property division was not smooth.
(footnote: 1) Temporary Orders were entered on March 31, 1995.  Appellant was required by the orders to pay appellee temporary support of $1,750 per month, together with other payments, including health insurance and car insurance premiums.  An arrearage developed as to the payments appellant had been ordered to make.  Motions for enforcement of the temporary orders and to hold appellant in contempt were filed and heard.  Disputes about how property was being used and how funds were being expended were the subject of various motions and hearings.

At the time the divorce was filed, the parties owned various properties and assets.  Some of the assets were claimed by appellant to be separate property.  Appellee disputed many of appellant’s claims that certain properties were his separate property.  Additionally, claims were made by appellee that if appellant’s allegedly separate properties were determined to be separate property assets, then the assets were subject to claims by the community for reimbursement.  Some community assets were alleged to be subject to claims by appellant for reimbursement of expenditures of his separate funds for the benefit of the community assets.  Some assets were retirement and profit-sharing plans resulting from appellant’s business activities.  Some assets were IRA accounts.  Federal retirement plan law, tax law, and actual and potential tax liabilities became considerations in dealing with the assets and retirement plans.

  The trial court signed an order on July 31, 1998, requiring the parties to file and exchange updated inventories and appraisements, and to submit written proposals for a final property division.  Appellant’s Fourth Amended Inventory and Appraisement filed on August 27, 1998, appears to be in response to the order.  The clerk’s record does not contain an updated inventory and appraisement from appellee in response to the July 31st
 order, but neither does the record reflect any complaint from appellant that appellee did not update her inventory and appraisement.  The record does not contain copies of proposals for property division from either appellant or appellee.  

On December 30, 1998, the trial court signed and filed a Final Decree of Divorce.  The decree contained a “just and right division of the parties’ marital estate, having due regard for the rights of each party.”  The decree contained a section entitled “
Property to
 
Husband
” which “awarded the following as [husband’s] sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property.”  The decree contained another section entitled “
Property to Wife
” which “awarded the following as [wife’s] sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property.” 

By two issues, appellant urges that the trial court committed reversible error.  First, appellant asserts that the trial court required him to sell a house in Las Vegas, Nevada, which was his separate property, and then required him to use the proceeds from the sale to pay for community obligations and temporary support to appellee.  He claims that such action was erroneous because the trial court was constitutionally prohibited from disposing of appellant’s separate property unless the community property was insufficient to pay community obligations.  

By his second issue, appellant claims that the trial court abused its discretion in dividing the property in a just and right manner as required by 
Tex. Fam. Code Ann
. § 7.001 (Vernon 1998)
(footnote: 2).  The abuse of discretion allegedly occurred via mischaracterization of  several of appellant’s separate properties as community property during the time that the trial court was considering how to divide the property.  Those properties were awarded to appellant in the final property division, and comprised a significant part of the property awarded to appellant.  Because of the alleged mischaracterization, appellant urges that the property division was materially affected, and that reversal is mandated so a proper “just and right” property division may be made.   

II.  DIVESTMENT OF SEPARATE PROPERTY

Appellant’s first issue is based on the trial court’s ordering him to sell real estate located at 305 Vista Glen, Las Vegas, Nevada, and to use the proceeds to pay temporary support to appellee and to otherwise support the community.  He urges that the court erred in entering the order because appellant indisputably traced the down payment on the property to his separate funds, and the court was aware that community assets were available to pay support and community obligations.  He claims that the order was an abuse of the trial court’s discretion because it impermissibly divested appellant of his separate property.  

Appellee responds to the first issue with several arguments.  Among the arguments are contentions that (1) appellant failed to establish the character of the property as his separate property, (2) appellant did not object to sale of the property, (3) appellant was not required to use the proceeds of the sale to pay support, and (4) appellant’s counsel requested that the funds be made available to pay temporary support.   

At a hearing on February 3, 1997
, it was established that appellant stopped paying the temporary support payments of $1,750 per month following the December, 1995 payment.  Appellant’s statements from the witness stand were to the effect that he did not pay because he ran out of money.  He testified that the parties had interests in two houses on Vista Glen street in Las Vegas, Nevada.  One house was located at 305 Vista Glen; the other was located at 309 Vista Glen.  He claimed the house at 305 Vista Glen as his separate property, but agreed that the house at 309 Vista Glen was community property.             On March 7, 1997, the trial court held a hearing which resulted in the court ordering appellant and appellee to cooperate in the sale of both the 305 Vista Glen and 309 Vista Glen properties.  Appellant testified at the hearing that the houses were “show homes” of the builder and were purchased and leased back to the builder with the intent that the houses would be sold after the leaseback expired.  Appellant further testified that the leases on the two properties expired on December 31, 1996,  the houses were vacant, the mortgages were going unpaid, insurance and taxes were continuing, and the houses were going to be foreclosed on.  The record reflects that following submission of the evidence, the trial judge and the attorneys were discussing how to approach the financial problems which had been disclosed.  Appellant was a participant in the discussions because of his knowledge of the properties.  Appellant told the judge that the Vista Glen show homes and one other show home which was vacant “need to be sold.  I tried to sell them.”  The judge thereafter announced his decision to order the Vista Glen houses sold.  

The house at 305 Vista Glen sold on October 6, 1997.  Appellant’s counsel received a check for the equity in the house and produced it at an October 7th
 hearing.  The check for the house equity was made out to both appellant and appellee, was in the amount of $18,694.71, and was to be deposited in the trust account of appellant’s attorney pursuant to court order.  Appellant’s attorney objected to spending the proceeds for any community obligations because the property had been separate property of appellant.  Appellee contested the position that the house had been separate property of appellant, as she had throughout the proceedings.  The trial court ordered that the funds were to be used for specified purposes which were later set out in a written order, and advised the parties that the question of whether the house was separate property would be taken up in connection with the final decree and property division.  The trial court signed an order on November 6, 1997, which stated that, pending further orders of the court, the proceeds from the sale of 305 Vista Glen “shall be used, and used only, for the following purposes:” and then listed five permissible purposes.  The purposes were (1) payment of past-due and future temporary alimony and health insurance reimbursements due to appellee, (2) payment of appellant’s rent, (3) payment of delinquent mortgage, tax or insurance bills on 309 Vista Glen, (4) payment of future amounts due on 309 Vista Glen which were not covered by rentals, and (5) expenditures consented to in writing by the parties.  At the same October 7, 1997, hearing, appellant represented that all existing arrearages of temporary support due to appellee had been paid.  The record does not reflect how, when, to whom or even if the proceeds from the sale of 305 Vista Glen were disbursed.

Appellant  personally advised the court that both Vista Glen houses needed to be sold.  Parties may not invite error by requesting an action of the trial court or recommending that the court take a particular action, and then complain on appeal that the trial court erred in taking such action.  
Northeast Tex. Motor Lines, Inc. v. Hodges
, 138 Tex. 280, 158 S.W.2d 487-88 (1942); 
see
 
City of Amarillo v. Langley
, 651 S.W.2d 906, 914 (Tex.App.--Amarillo 1983, no writ).

Furthermore, even if we assume that 305 Vista Glen was separate property of appellant, unless he made a timely request, objection or motion sufficiently specific to make the trial court aware of his complaint, he did not preserve error for review as to the order that the property be sold.  
Tex. R. App. P
. 33.1(a)(1).  Appellant not only failed to make a timely objection or complaint about the order authorizing the sale, he clearly told the judge that the house needed to be sold.     

Appellant did make it clear to the trial court that he opposed being ordered to use his separate funds to pay community obligations unless community funds were not available.  Appellant, however, does not allege any particular amount paid to appellee or for the community’s benefit from such funds, nor does he reference the record where that evidence can be found.  If we again assume, without deciding, that 305 Vista Glen was separate property, and that the funds represented to have been received by appellant’s attorney from its sale were entirely his separate funds and did not encompass any community equity, we do not discern evidence in the record showing that the funds were disbursed, or if they were, to whom, for what purpose, or when.  Appellant has not shown harm from the alleged error.  We may not reverse a judgment unless error has probably caused the rendition of an improper judgment.  
Tex. R. App. P
. 44.1(a).  

Appellant invited the trial court to order the house at 305 Vista Glen to be sold, and is estopped to complain of the court’s ordering the sale.  Moreover, he did not preserve error as to the trial court’s order.  Nor has he shown that the proceeds of the sale were used for community purposes or to pay support payments to appellee.  Thus, he has not shown that he was harmed by the use of any separate property proceeds from the sale.  Appellant’s first issue is overruled.

III.  IMPROPER PROPERTY DIVISION BECAUSE OF 

MISCHARACTERIZATION OF PROPERTY

By his second issue, appellant claims the trial court committed reversible error because the property division was made in violation of Family Code § 7.001, which requires  the court to divide the estate of the parties “having due regard for the rights of each party . . . .”  The trial court allegedly did not have due regard to the rights of appellant because the court considered some of what he claims was his separate property, mis-characterized as community property, when making the final property division.  He urges that the court’s considering the allegedly mischaracterized property was an abuse of discretion which materially affected the division of property.  The properties in question were located at street addresses of 8445 Bay Crest, 4408 Lomas Court and 10101 Plomosa, Las Vegas, Nevada.  Appellant makes the same complaint about property located at 5704  81st
 Street, Lubbock, Texas, in which he claimed no ownership interest at all.

Appellee responds by asserting that the record does not support a claim of mischaracterization of property, and even if it did, then appellant has not proved and cannot prove that he was harmed as a result.  First, appellee says that appellant cannot establish that the trial court mischaracterized the properties as alleged by appellant.  In support of this argument, he points out that appellant does not reference any evidence or finding to support the claimed mischaracterization.  Next, appellee posits that even if appellant could show mischaracterization of property by the court, the record does not support appellant’s claim that a different characterization would have resulted in a different division of property. 

       In a divorce proceeding, the trial court shall order a division of the estate of the parties in a manner it deems just and right.  
See
 Family Code § 7.001.  The ultimate or controlling issue as to the property division is whether the division was just and right.  
Hill v. Hill
, 971 S.W.2d 153, 155 (Tex.App.--Amarillo 1998, no pet.); 
Rafferty v. Finstad
, 903 S.W.2d 374, 376 (Tex.App.--Houston [1
st
 Dist.] 1995, writ denied). 

The trial court is afforded wide discretion in dividing the marital estate and its discretion will not be disturbed on appeal unless a clear abuse of discretion is shown.  
Jacobs v. Jacobs
, 687 S.W.2d 731, 733 (Tex. 1985); 
Murff v. Murff
, 615 S.W.2d 696, 698 (Tex. 1981).  The community property need not be equally apportioned between the parties.  
See
 
id
. at 698-99.  In exercising its discretion, the trial court may consider many factors in dividing the community estate.  For example, the trial court may consider a spouse’s dissipation of the community estate, as well as the spouse’s misuse of community assets.  
Vannerson v. Vannerson
, 857 S.W.2d 659, 669 (Tex.App.--Houston [1
st
 Dist.] 1993, writ denied); 
Reaney v. Reaney
, 505 S.W.2d 338, 340 (Tex.Civ.App.--Dallas 1974, no writ).  A disproportionate award may also be considered when a spouse conceals community assets, 
Rafidi v. Rafidi
, 718 S.W.2d 43, 45 (Tex.App.--Dallas 1986, no writ), or when a spouse withdraws community assets from a brokerage account in violation of a court order.  
See
 
Arrington v. Arrington
, 613 S.W.2d 565, 569 (Tex.Civ.App.--Fort Worth 1981, no writ).  A spouse’s failure to make court-ordered temporary support payments or failure to obey the court’s temporary orders restricting the use of community assets may also justify a disproportionate award from the community.  
See
 
Jones v. Jones
, 699 S.W.2d 583, 585 (Tex.App.--Texarkana 1985, no writ).  Income tax liability may also be considered in dividing the community estate.  
See
 
Baccus v. Baccus
, 808 S.W.2d 694, 700 (Tex.App.--Beaumont 1991, no writ).  Finally, a large separate estate is justification for reducing a spouse’s share of the community property because a large separate estate decreases a spouse’s need for community resources.  
See
 
Murff
, 615 S.W.2d at 699; 
Dewey v. Dewey
, 745 S.W.2d 514, 520 (Tex.App.--Corpus Christi 1988, writ denied).

An abuse of discretion does not occur if the trial court bases its decision on conflicting evidence and some evidence reasonably supports the trial court's decision.  
See
  
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex.1978).  An abuse of discretion does not exist if some evidence in the record shows the trial court followed guiding rules and principles.  
See
 
In re Epic Holdings, Inc.
, 985 S.W.2d 41, 57 (Tex. 1998); 
Morrow v. H.E.B., Inc.
, 714 S.W.2d 297, 298 (Tex.1986).    The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Southwestern Bell Telephone Co. v. Johnson
, 389 S.W.2d 645, 648 (Tex.1965);  
Jones v. Strayhorn
, 159 Tex. 421, 321 S.W.2d 290, 295 (Tex.1959).

At appellant’s request, the trial court entered Findings of Fact.  The trial court found, among other findings, that “The division of the property of [appellant] and [appellee] effected by the final judgment is just and right, having the due regard for the rights of each party.”  No other finding was made as to value of or characterization of any property.  The final divorce judgment divided the property between appellant and appellee as the separate property of each of them, respectively, free and clear of claims of the other.  Neither the judgment nor any finding of fact characterized any property as to whether it was separate or community property before entry of the final divorce judgment. 

Additionally, the character of the properties in question as separate property of appellant, with a claim by the community for reimbursement, or community property with a claim by the separate estate of appellant for reimbursement was disputed throughout the proceedings.  For example, appellant’s Fourth Amended Inventory and Appraisement, filed on August 27, 1998, classified the three Las Vegas properties as community property, with community property equity, subject to a claim for reimbursement by appellant’s separate estate.  The characterization differed from prior inventories by appellant, but conformed to the consistent positions of both parties that the properties had, at least to some extent, both separate and community equities in them.  Appellant does not question the trial court’s duty to divide the community equities in the properties as part of the final property division, even if it is assumed that all of the equities were only rights of reimbursement.  

Appellant does not refer us to evidence in the record which supports his claim of mischaracterization by the trial judge of his separate property as community property.  His premise is that because he was awarded the properties in the final judgment as his separate properties, the trial court must have divided the property while laboring under a mistake as to the character of the properties.  We disagree that such a conclusion is warranted.  

The awarding of property to appellant in the final divorce judgment as his sole and separate property, and divesting appellee of all right, title, interest and claim to the property is not evidence that the trial judge mischaracterized property prior to and as part of the property division process.  Such award and the language used by the trial court reflects that the court considered the contentions of the parties, the evidence, and to the extent that the community had any claim to or interest in the properties awarded to appellant, those claims and interests were divested as part of the property division.  That is what the trial court is charged to do.  
See
 Family Code § 7.001; 
Tex. R. Civ. P
. 300, 301.

The positions of appellant and appellee conflicted on whether appellant had any claim at all to the property located at 5704 81st
 Street in Lubbock.  Appellant maintained that he had no equity or interest in the property, that he was merely a renter, and that his sister owned the property.  Appellee and her attorneys questioned appellant’s veracity and put the questions of ownership and equity in the property into issue.  The trial judge, as the trier of fact,
 is the sole judge of the 
credibility of the witnesses and the weight to be given to their testimony, 
Leyva v. Pacheco
, 163 Tex. 638, 358 S.W.2d 547, 549 (1962), and may believe one witness and disbelieve another and resolve inconsistencies in testimony.  
McGalliard v. Kuhlman
, 722 S.W.2d 694, 697 (Tex.1986).  Once the issue of ownership and actual or alleged equity in the property arose, the trial court did not abuse its discretion in determining the extent and value of any alleged interest that the community might have in the property.  Family Code § 7.001; 
Jacobs
, 687 S.W.2d at 733.  Appellant does not refer us to any finding to support a conclusion that the trial court considered the community to have an interest or equity value in the house, or that appellee received any value in the property division because the house was set aside to appellant by the judgment.  Thus, appellant has not shown that he suffered harm by the trial court’s resolution of the conflicting claims and evidence, and by the allocation of the property to him in the property division. 

The trial court made the following findings of fact pursuant to appellant’s request that Findings of Fact be entered:

[Appellant] has hidden and has not disclosed assets during the pendency of this proceeding although ordered to disclose all assets.

[Appellant] gave material false testimony in these proceedings.

[Appellant] forged [appellee’s] signature on deeds affecting the title of property of the [appellee] and the [appellant].

[Appellant] unilaterally, secretly, and without disclosure to the court made substantial changes in the assets of the parties after the original trial greatly increased the time required by the Court to deal with this case, as well as the time, effort, and as a result, the fees of the parties were greatly increased.

The division of the property of [appellant] and [appellee] effected by the final judgment is just and right, having the due regard for the rights of each party.

14. In making the division of the property, the Court considered all of the above factual findings to exist:

(a) the uncertainty that [appellant] had disclosed all of his assets to the Court;

(b) the fact that [appellant] has a substantial separate estate;

(c) the fact that the receipt of separate property from the death of [appellant’s] brother created a substantial tax liability for the community which was paid, in part, with community funds;

(d) the fact that [appellant] used community funds for his own benefit in violation of the Court orders;

(e) the attorneys fees incurred by [appellee] which were, in large measure, due to the violations of court orders and other wrongful acts of [appellant]. 

         Matters which the trial court considered in arriving at its ultimate decision as to a just and right division of property correspond to the guiding rules and principles found in prior cases and the Family Code.  The trial court’s property division was not arbitrary and unreasonable.  
See
 
Smithson v. Cessna Aircraft Co.
, 665 S.W.2d 439, 443 (Tex. 1984);  
Landry v. Travelers Insurance Co.
, 458 S.W.2d 649, 651 (Tex. 1970); 
Craddock v. Sunshine Bus Lines
, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).
  Appellant’s second issue is overruled.

We affirm the judgment of the trial court.

Phil Johnson

    Justice

Do not publish.

FOOTNOTES
1:
The clerk’s record consists of three volumes.  The reporter’s record consists of eleven volumes of testimony from hearings, a bench trial held in January, 1996, and subsequent hearings concerning revised values and status of various properties.  Exhibits  from the trial and the hearings comprise six additional volumes in the reporter’s record.  Appellant filed four inventories and appraisements of property, and supplements, during the pendency of the case.  Three inventories and appraisements were filed by appellee. 

2:
Further references to Family Code provisions will be by reference to “Family Code § _____.